UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WALTER HENRY WOJCIK,

                Plaintiff,

v.                                           **DECISION AND ORDER**
                                                      17-CV-22S
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

      1.      Plaintiff Walter Wojcik challenges the determination of an Administrative Law Judge ("ALJ") that he is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that he has been disabled since January 1, 2009, due to depression, diabetes, obesity, diverticulitis, and a right eye condition. Plaintiff contends that his impairments render him unable to work, and thus, he is entitled to disability benefits under the Act.

      2.      Plaintiff filed an application for disability insurance benefits on September 22, 2010, which the Commissioner denied on December 27, 2010. Plaintiff thereafter requested a hearing before an ALJ. On April 25, 2012, ALJ Timothy M. McGuan held a hearing in Buffalo, New York, at which Plaintiff and a vocational expert (via telephone) appeared and testified. Plaintiff was represented by a paralegal. The ALJ considered the case *de novo*, and on June 27, 2012, issued a decision denying Plaintiff's application for benefits. The Appeals Council denied Plaintiff's request for review on July 8, 2013. Plaintiff appealed to the United States District Court for the Western District of New York, and by stipulation of Plaintiff and the Commissioner, and the case was remanded to the

agency pursuant to the fourth sentence of 42 U.S.C. § 405(g) on June 6, 2014. The Appeals Council thereafter remanded the case to the ALJ on September 3, 2014.

3. A second hearing was held before ALJ McGuan on December 16, 2014, at which Plaintiff, represented by counsel, and a vocational expert appeared and testified. At the time of the remand hearing, Plaintiff was 49 years old with past work experience as a criminal investigator at an animal shelter, a customer service representative, a laborer for a tree service and manufacturing company, and a security guard. On February 9, 2015, the ALJ issued a written decision denying Plaintiff's application for benefits. After the Appeals Council granted Plaintiff's request for an extension of time to appeal, Plaintiff filed the current action on January 10, 2017, challenging the Commissioner's final decision.[1]

4. On September 8, 2017, Plaintiff filed a Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 18). On November 7, 2017, the Commissioner filed a Motion for Judgment on the Pleadings. (Docket No. 20). Plaintiff filed a reply on November 20, 2017 (Docket No. 21), at which time this court took the matter under advisement without oral argument. For the following reasons, Plaintiff's motion is granted, Defendant's motion is denied, and this case will be remanded.

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there

---

[1] The ALJ's February 9, 2015 decision is the final administrative decision.

has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity

of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

      8.     The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

      9.     Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20

4

C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10.    In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since September 22, 2010, the application date (R. at 472);[2] (2) Plaintiff has the following severe impairments: diabetes mellitus, type II; sleep apnea; obesity; vision problems in right eye with corneal transplant and correction; degenerative disc disease in the cervical spine and lumbar spine with mild spondylosis; bone spurs in ankle; and mood disorder (R. at 472); (3) Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in the C.F.R. (R. at 474); (4) Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), with certain exceptions[3] (R. at 476); (5) Plaintiff could not perform his past relevant work (R. at 482); and (6) Plaintiff could perform jobs that exist in significant numbers in the national economy (R. at 483). Accordingly, the ALJ determined that Plaintiff was not under a disability as defined by the Act since September 22, 2010. (R. at 484).

11.    Plaintiff's first challenge to the ALJ's decision is that the ALJ reached his RFC assessment without properly considering the opinions of his treating physicians. Specifically, Plaintiff argues that the ALJ's failure to give more than "partial" or "little" weight to the opinions of any of his treating physicians resulted in a determination

---

[2] Citations to the underlying administrative record are designated as "R."
[3] The ALJ found that Plaintiff retained the RFC for light work, except that he needs a sit/stand option that allows him to switch between positions after continuously standing for 45 minutes at a time; that he can never do work requiring fine vision, such as reading of fine print or looking at small objects; that he can never operate foot controls; that he can occasionally interact with the general public; and that he can occasionally understand, remember, and carry out complex and detailed tasks. (R. at 476).

5

improperly based on the ALJ's substituted medical opinion. Having reviewed the ALJ's decision in light of Plaintiff's arguments, the Court finds reversible error.

12. Plaintiff's three treating physicians were Dr. Syed, Dr. Pusatier, and Dr. Hashim, all of whom had significant treatment relationships with Plaintiff. Dr. Hashim is the psychiatrist with the longest treating relationship with Plaintiff. Between September 2009 and November 2012, Dr. Hashim treated Plaintiff twenty times. (R. at 433-45). His treatment notes indicate that Plaintiff had a "mixture of Schizoid and anxious personality," (R. at 434), "dysthymia possibility of generalized anxiety disorder, social anxiety disorder, [and] possibly Schizophrenic disorder," (R. at 436), and that his "most likely diagnosis is schizoaffective disorder" (R. at 437). Dr. Hashim prescribed Plaintiff medication each time, and some of Dr. Hashim's treatment notes describe that the medications helped Plaintiff with his symptoms. (R. at 439). Dr. Hashim's treatment notes show that Plaintiff progressed in some ways from 2009 to 2010, but his 2011 notes describe that Plaintiff's diagnoses of anxiety, schizophrenia, and mood disorders continued. (R. at 442-43). In March 2012, Plaintiff reported that he "feels anxiety is much less with the medication," (R. at 457), but treatment notes from April 2012, July 2012, and November 2012 report that Plaintiff's diagnoses were maintained. (R. at 458, 1099, 1102).

13. Dr. Hashim completed a Mental Functional Limitation Evaluation in February of 2012. In it, Dr. Hashim concluded that, less than thirty percent of the time at work, Plaintiff would be able to interact appropriately with supervisors, deal with work stresses, respond appropriately to changes in a routine work setting, maintain attention and concentration, and understand/remember and carry out complex job instructions. (R. at 448-49). And between thirty and fifty-nine percent of the time, Plaintiff would be able

6

to follow work rules, interact appropriately with co-workers and the public, function independently, and understand/remember and carry out simple job instructions. (R. at 448-49). Dr. Hashim also concluded that based on his history of treating Plaintiff, he believed that a routine, repetitive entry-level job would exacerbate Plaintiff's psychologically based symptoms. (R. at 450).

14. Dr. Pusatier treated Plaintiff between 2009 and 2012. In January 2009, Dr. Pusatier diagnosed Plaintiff with a multitude of ailments including hypertension, obesity, and depressive disorder. (R. at 316). In September 2010, he notes that Plaintiff was experiencing "less strength and endurance" and had a flare in his toe (R. at 311). Notes from December 2010, March 2011, April 2011, and May 2011 report improvements in Plaintiff's symptoms, but those same notes maintain Plaintiff's diagnoses. (R. at 403, 408, 411, 414). Plaintiff visited Dr. Pusatier in October 2011, but Plaintiff had apparently forgotten to get labs done, so there was no medical evaluation. (R. at 417). In February 2012, Dr. Pusatier reported that Plaintiff was not doing well, had bone spurs in his ankle, was wearing a boot and seeing a therapist. Dr. Pusatier also noted that Plaintiff's diagnoses were maintained. (R. at 420).

15. Dr. Pusatier completed a Medical Source Statement in February 2012 based on his three years of treating Plaintiff. In it, he concluded that Plaintiff can never lift or carry more than twenty-one pounds, and that he can occasionally (one-third of the time) carry between eleven and twenty pounds. (R. at 426). He also concluded that Plaintiff can only sit for up to one hour without interruption, can only stand for fifteen minutes at a time, and can only walk for fifteen to thirty minutes at a time. (R. at 427). In an eight-hour workday, Dr. Pusatier concluded that Plaintiff can sit for four hours, stand

7

for two to three hours, and walk for one hour. (R. at 427). Finally, Dr. Pusatier concluded that Plaintiff can frequently use his hands by reaching, handling, fingering, and feeling, that he can occasionally push and pull, and that he can occasionally use his feet. (R. at 428).

16. Dr. Syed completed a Residual Functional Capacity Questionnaire in November 2014 based on his treatment of Plaintiff since 2012 on a bi-monthly basis. In it, he concluded that Plaintiff was capable of sitting for two hours at a time and standing for thirty minutes at a time. (R. at 1037). He also concluded that in an eight-hour workday, Plaintiff could sit for a total of two hours, and could stand or walk for less than two hours. (R. at 1038). He concluded that Plaintiff must walk every ten minutes for a total of five minutes each time, and that he would require ten to fifteen-minute breaks each hour. (R. at 1038). Dr. Syed also found that Plaintiff could frequently lift up to twenty pounds and occasionally lift fifty pounds, and that he could occasionally bend, squat, and climb ladders and stairs. (R. at 1038-39). Finally, he concluded that Plaintiff's impairments would cause him to miss more than four days of work per month. (R. at 1039).

17. "The SSA recognizes a rule of deference to the medical views of a physician who is engaged in the primary treatment of a claimant. Thus, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (internal citation, quotation marks, and alterations omitted); Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) ("[T]he opinion of a claimant's treating physician as to the nature and

8

severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" (quoting 20 C.F.R. § 404.1527(d)(2)).

18. Thus, "to override the opinion of the treating physician, [the Second Circuit has] held that the ALJ <u>must</u> <u>explicitly</u> consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." <u>Selian v. Astrue</u>, 708 F.3d 409, 418 (2d Cir. 2013) (quoting <u>Burgess</u>, 537 F.3d at 129) (emphasis added). When the ALJ does not give a treating physician's medical opinion controlling weight, he must explain how he weighed the factors in 20 C.F.R. § 404.1527(c). See <u>Reyes v. Barnhart</u>, 226 F. Supp. 2d 523, 529 (S.D.N.Y. 2002). Generally, this rule is discounted only where "the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." <u>Halloran v. Barnhart</u>, 362 F.3d 28, 32 (2d Cir. 2004) (citing <u>Velno v. Barnhart</u>, 312 F.3d 578, 588 (2d Cir. 2002)); 20 C.F.R. § 404.1527(d)(2).

19. The Second Circuit has consistently instructed that the failure to provide good reasons for not crediting the opinion of a plaintiff's treating physician is a ground for remand. See <u>Halloran v. Barnhart</u>, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion and we will continue remanding when we encounter opinions from ALJ's [sic] that do not comprehensively set forth reasons for the weight

9

assigned to a treating physician's opinion."); Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) ("The SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant."); Schall v. Apfel,134 F.3d 496, 503-05 (2d Cir. 1998) (remanding where court found ALJ failed to provide good reasons).

20. Here, the ALJ failed to provide good reasons for affording the treating physicians' opinions "little weight," and specifically, less than controlling weight. Significantly, the ALJ concluded that both Dr. Syed's and Dr. Hashim's findings were inconsistent with the medical evidence of record as a whole, without citing to any specific record evidence to support that proposition. (R. at 478). That was error. See Burkard v. Comm'r of Soc. Sec., No. 1:17-CV-00290 EAW, 2018 WL 3630120, at *4 (W.D.N.Y. July 31, 2018) ("The ALJ afforded Dr. Martin's medical opinion "little weight" in his overall RFC determination. In doing so, the ALJ did little more than indicate that he determined the opinion to be inconsistent with other evidence in the record. Contrary to the regulations, the ALJ did not assess the five factors that must be considered in determining how much weight to be given to a treating physician's opinion."); Doria v. Colvin, No. 13-CV-598S, 2014 WL 3109184, at *3 (W.D.N.Y. July 8, 2014) ("While the ALJ is free is assign little or even no weight to a treating source under certain conditions, the ALJ's failure to elaborate these findings is troubling. The ALJ does not explain what 'medical evidence' the ALJ's opinion is inconsistent with."); Nix v. Astrue, No. 07-cv-344, 2009 WL 3429616, at *9 (W.D.N.Y. Oct. 22, 2009) ("In terms of the ALJ's finding of inconsistencies with 'objective medical evidence,' the ALJ commits legal error by failing to articulate the 'objective medical evidence' with which these findings are inconsistent.").

21. The ALJ also discredited the opinions of all three treating physicians primarily because some of their notes showed improvements in Plaintiff's condition. (R. at 478-80). To the extent the ALJ meant to conclude that each respective physician's opinions were internally inconsistent and thus deserving of diminished weight, that finding cannot form substantial evidence for a determination not affording controlling weight to the treating physicians' opinions. The regulations explicitly provide that a treating physician's opinion will be afforded controlling weight so long as it is not inconsistent with the record <u>as a whole</u>; 'internal inconsistencies' in a treating physician's own notes make no appearance in the language of the statute. <u>See</u> 20 C.F.R. § 404.1527 ("If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with <u>the other substantial evidence</u> in your case record, we will give it controlling weight.") (emphasis added); <u>see</u> also <u>Romero v. Colvin</u>, No. 11-CV-3920 (ENV), 2016 WL 74820, at *4 (E.D.N.Y. Jan. 6, 2016) ("[T]o the extent that the ALJ perceived internal inconsistencies in [the treating physician]'s opinion, he was obliged to recontact [the treating physician] and attempt to resolve them."); <u>Schaal v. Apfel</u>, 134 F.3d 496, 505 (2d Cir. 1998) (holding that "even if the [treating physician's] clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician]"). Moreover, "by assuming, without offering explanation or pointing to other medical evidence," that an improvement in Plaintiff's symptoms "permitted a much broader functional capacity, the ALJ improperly substituted [his] 'own expertise or view of the medical proof for the treating physician's opinion.'" <u>Gallishaw v.</u>

Comm'r of Soc. Sec., 296 F. Supp. 3d 484, 497 (E.D.N.Y. 2017) (quoting Greek, 802 F.3d at 375).

22. Having closely examined the record, this Court finds that the ALJ failed to properly consider the opinions of the treating and examining physicians, "an error that requires remand." Marsceill v. Colvin, No. 14-CV-797S, 2015 WL 7573239, at *4 (W.D.N.Y. Nov. 25, 2015), and that his rejection of those opinions is not supported by substantial evidence in the record, particularly considering that the ALJ cites to no contradictory medical opinion evidence. Remand is therefore required for the ALJ to properly consider the medical opinion evidence.

23. In addition to challenging the ALJ's consideration of the medical evidence, Plaintiff also argues that the RFC is not supported by substantial evidence. This Court offers no opinion on this argument at this time since the case is being remanded on other grounds. On remand, the ALJ is free to address these arguments to the extent he deems necessary.

24. After carefully examining the administrative record, this Court finds cause to remand this case to the ALJ for further administrative proceedings consistent with this decision. Plaintiff's Motion for Judgment on the Pleadings is therefore granted. Defendant's motion seeking the same relief is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 18) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 20) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated: December 28, 2018
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge
